**AmCAN ENTERPRISES, INCORPORATED, doing business as North American Directories—The Illinois Yellow Page Directory, Plaintiff–Appellant,**

v.

**Richard RENZI, Scott Cullinane, and Michael Cullinane, all both individually and doing business as American Yellow Pages and as Yellow Pages of Illinois, Defendants–Appellees.**

No. 93–3628.

United States Court of Appeals, Seventh Circuit.

Argued April 14, 1994.

Decided Aug. 1, 1994.

**234**

Robert R. Tepper, argued, Chicago, IL, Frank J. Shannon, III, Atlanta, GA, for plaintiff-appellant.

Monica L. Thompson, argued, Kevin Tottis, Keck, Mahin & Cate, David J. Gottesman, Rosenthal & Schanfield, Chicago, IL, Monte M. Bond, Andrew F. Emerson, Mankoff, Hill, Held & Goldberg, G. Richard Poehner, Alexander, Weston & Poehner, Dallas, TX, for Richard Renzi.

Monica L. Thompson, Keck, Mahin & Cate, Chicago, IL, Monte M. Bond, Mankoff, Hill, Held & Goldberg, Dallas, TX, for Scott Cullinane and Michael Cullinane.

Before POSNER, Chief Judge, and COFFEY and FLAUM, Circuit Judges.

POSNER, Chief Judge.

The plaintiffs (collectively AmCan) sued the defendants (collectively American Yellow Pages) for infringing an unregistered trademark in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A). See *Blau Plumbing, Inc. v. S.O.S. Fix–It, Inc.*, 781 F.2d 604, 608 (7th Cir.1986); 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27.03[1][b] (3d ed. 1994). AmCan sells a telephone directory under the name "The Illinois Yellow Pages." American Yellow Pages, led by a former employee of AmCan—defendant Renzi—tried to solicit orders for a competing directory that he planned to publish under the name "Yellow Pages of Illinois." The suit appears to have had a solid basis; not only were the names similar, but the solicitation form that Renzi used was almost identical to that of his former employer. The parties entered into a consent decree, which the district judge approved, requiring American Yellow Pages to change the name of its directory to "Yellow Pages of Illinois Business Directory" and forbidding it to use the name "Yellow Pages of" with any state, not just Illinois. For Renzi had been soliciting orders in other states besides Illinois, though how publishing a directory for another state could hurt AmCan has not been made clear to us. Maybe AmCan published similar directories in other states, or planned to do so. We do not know, and it is not germane to the appeal.

Another puzzle is the change in name required by the decree: from "Yellow Pages of Illinois" to "Yellow Pages of Illinois Business Directory." It seems an awfully small change. But perhaps it is as large as would be consistent with the fact that "yellow pages" has become a generic term for a local business telephone directory alphabetized by product or service, *Directory Publishing Services, Inc. v. Runyon*, 851 F.Supp. 484, 488–90 (D.D.C.1994); cf. *Bellsouth Advertising & Publishing Co. v. Donnelley Information Publishing, Inc.*, 719 F.Supp. 1551, 1564 (S.D.Fla.1988) (it was not always thus—see *Southwestern Bell Tel. Co. v. Nationwide Independent Directory Service, Inc.*, 371 F.Supp. 900, 909–11 (W.D.Ark.1974)), hence one that anyone can use on such a directory.

Shortly after the consent decree went into effect, American Yellow Pages discovered that the names "Yellow Pages of Florida," "Yellow Pages of New York," etc.—all names that it was forbidden by the consent decree to use—were being used by Directory Publishing Services, Inc. (yes, the same firm as in *Directory Publishing Services, Inc. v. Runyon, supra*), owned by Ralph Devine, formerly a de facto partner in AmCan; Charles Smith, the other partner, was the Am(erican) in AmCan, Devine the Can(adian). AmCan had actually registered the name "The Yellow Pages of [name of state]" in several states as a trademark.

American Yellow Pages moved the district court to set aside the consent decree under

Fed.R.Civ.P. 60(b). The motion did not say which subsection of Rule 60(b) was being invoked but implied that it would be inequitable to hold American Yellow Pages to the terms of the consent decree (Rule 60(b)(5)), in light of AmCan's conduct; and there was even a suggestion that the decree had been procured by fraud (Rule 60(b)(3)). After at first denying that it was responsible for Devine's use of the name "Yellow Pages of [name of state]," AmCan admitted that Smith had on its behalf assigned the right to the use of the name to Devine—and had done so before the consent decree forbidding American Yellow Pages to use the name had been signed. The judge granted the motion to vacate the consent decree, citing both subsections (3) and (5) of Rule 60(b).

AmCan concedes that it concealed from American Yellow Pages, when the parties negotiated the consent decree, its having assigned, or at least having attempted to assign, the allegedly infringing mark that American Yellow Pages had planned to use for its directory. If American Yellow Pages had no reason to suspect such conduct and would not have signed the decree had it known about it, then AmCan was guilty of fraud and the decree was properly set aside. *Metlyn Realty Corp. v. Esmark, Inc.*, 763 F.2d 826, 831–33 (7th Cir.1985); *Bandai America Inc. v. Bally Midway Mfg. Co.*, 775 F.2d 70, 73–74 (3d Cir.1985). But these are big "ifs."

 The fact that "Yellow Pages of Illinois" (the infringing mark, which AmCan apparently has authorized Devine to use) is similar to "The Illinois Yellow Pages" (AmCan's mark) would not be problematic if the names denoted the same product sold by the same seller, and conceivably they do. "Coca–Cola" and "Coke" are similar names but properly so because they denote the same product sold by the same firm. The use of similar names to denote the identical product of a single seller is no more confusing than the fact that two bottles of Coca–Cola carry the same name. And while AmCan and Directory Publishing Services (Devine's company) are not the same firm, the owner of a trademark is allowed to license its use, provided that it takes effective steps to

ensure that the product sold by the licensee is of the same quality as the product sold by the licensor under the same name, so that consumers are not deceived by the identity of names into buying a product different from what they reasonably expected. 2 *McCarthy on Trademarks, supra*, §§ 18.14, 18.18; *Oberlin v. Marlin American Corp.*, 596 F.2d 1322, 1327 (7th Cir.1979). If the licensor does not maintain adequate quality control, the mark may be deemed abandoned, or, equivalently, the licensor may be estopped to complain about infringements of it. *Moore Business Forms, Inc. v. Ryu*, 960 F.2d 486, 489 (5th Cir.1992); *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1017 (9th Cir.1985). "[A] bare license is a fraud upon the public and unlawful." *Societe Comptoir de l'Industrie Cotonniere Etablissements Boussac v. Alexander's Department Stores, Inc.*, 299 F.2d 33, 35 (2d Cir. 1962).

The record of this case is a blank concerning the terms on which AmCan licensed the use of the name "Yellow Pages of [name of state]" to Devine, so we cannot assume that it was a bare license. Nor is there any evidence that in "appropriating" the name under which American Yellow Pages had planned to sell its directory, AmCan in collaboration with Devine was attempting to steal whatever goodwill had accrued to American Yellow Pages from its promotion of the allegedly infringing trade name. Since American Yellow Pages had not got around to actually publishing the directory, and since its promotional literature was itself infringing, any suggestion that American Yellow Pages had obtained lawful goodwill in the infringing name would in any event ring hollow.

There is thus no proof of fraud, and equally no proof that continued enforcement of the consent decree would be inequitable. Yet, whether because AmCan misunderstood its legal rights, was misled by remarks of the district judge (who appears to have thought—but didn't explain why—it would be deceptive for anyone to use the name "Yellow Pages of [name of state]" other than AmCan), or did not properly license its new trade name to Devine, it concealed the li-

cense not only from its adversary but also from the judge. This behavior creates at least a suspicion that what *really* happened is that AmCan authorized Devine to use the infringing name without insisting that any directory that he published under it be of the same character and quality as AmCan's directories. Maybe AmCan didn't really think that the names were confusing, despite its having sought to enjoin American Yellow Pages, or maybe it was ignorant of trademark law. Maybe worse is afoot—some fraud by Devine (as found in the *Directory Publishing Services* case, decided after the oral argument of this appeal) in which Smith may conceivably have been implicated, though there is no suggestion of this despite his previous association with Devine.

A remand is necessary to clear up these mysteries. If AmCan properly licensed the infringing name to Devine, it acted within its rights and without impairing the purposes of the decree. If not—if this was indeed a naked license of a name easily confused with the mark protected by the consent decree—then AmCan acted inconsistently with the decree and indeed may well have abandoned the mark, in which event the decree should be vacated, having been based on a premise now removed.

It is premature to consider the further possibility that by concealing the license from the district judge AmCan committed a fraud on the court, an independent ground under Rule 60(b) for vacating a judgment. *In re Met-L-Wood Corp.,* 861 F.2d 1012, 1018 (7th Cir.1988). The district judge did not address the issue, and it almost certainly is academic. If the concealment was immaterial because AmCan was acting within its rights in licensing the trademark to Devine, there was no fraud—fraud is the concealment of *material* facts. If the concealment was material because the license was invalid, undermining and probably destroying the mark and thereby cutting the ground out from under the decree, the decree will have to be set aside under Rule 60(b)(5) (not to mention the catch-all provision, Rule 60(b)(6)), and there will be no occasion to decide whether there was a fraud on the court as well.

Still another possibility is that the issues of naked licensing and fraud on the court are severable from the essential provision of the decree, which may simply have been to prevent Renzi from passing himself off as Am-Can, his former employer, by using a confusingly similar solicitation form. That too is an issue for exploration on remand, though we hope that no further proceedings are necessary—that we have provided enough guidance to enable the parties to settle their possibly quite minor differences without incurring further expenses of litigation and taking the time of busy judges.

VACATED AND REMANDED.