**POLLUTION DENIM & CO., a California Corporation, Plaintiff,**

v.

**POLLUTION CLOTHING CO., an Oklahoma Domestic Limited Liability Company; Jordan Scott Wunder, an individual; Spirituali, Inc., a California Corporation, individually and d/b/a Spirituali Kids; Planet Funk, business entity unknown; Ryzen-7, business entity unknown; NHR Connection, business entity unknown; and Does 1–10, Defendants.**

**No. CV 07–5208 MMM (JWJx).**

United States District Court, C.D. California.

Sept. 7, 2007.

---

113. Notice of Motion at 2; Mot. at 24–25; Opp. at 24–25.

Scott A. Burroughs, Stephen M. Doniger, Doniger Law Firm, Culver City, CA, for Plaintiff.

Brian K. Wunder, Richard S. Siluk, Osha Liang, Houston, TX, Erica J. Pruetz, Pruetz Law Group, Los Angeles, CA, for Defendants.

## ORDER DISCHARGING ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE AND DENYING PLAINTIFF'S REQUEST FOR A PRELIMINARY INJUNCTION

AUDREY B. COLLINS, District Judge.

On August 10, 2007, plaintiff Pollution Denim & Co. commenced this trademark infringement action against Pollution Clothing Co., its president Jordan Wunder (collectively, "defendants"), and certain retailer and fictitious defendants. On the same day, plaintiff moved for and received a temporary restraining order and order to show cause why a preliminary injunction should not issue. Plaintiff contends that defendants' use of the mark "Pollution Clothing" in connection with the marketing and sale of shirts and other apparel infringes its "pending" "Pollution Denim & Co." mark and its federally registered "Skin Pollution" mark. Plaintiff seeks a preliminary injunction prohibiting defendant from further advertising, displaying, selling, or offering for sale any shirts or other apparel under the "Pollution Clothing" mark. For the reasons stated below, the court now discharges the order to show cause and denies plaintiff's request for a preliminary injunction.[1]

---

1. Due to exigent personal circumstances, the Honorable Margaret M. Morrow is not capable of presiding over this proceeding discharging the order to show cause and denying plaintiffs request for a preliminary injunction.

## I. FACTUAL BACKGROUND

### A. Defendants' "Pollution Clothing" Mark

Jordan Wunder is the founder, president, and sole employee of Pollution Clothing, LLC, an Oklahoma limited liability company that he founded in September 2005.[2] He began designing clothing bearing the "Pollution Clothing" mark in February 2005.[3] In March 2005, he began distributing his clothing in Oklahoma City, Oklahoma through retailer Blue Seven, and expanded his sales to other local businesses in June 2005.[4] Later that summer, he purchased the website domain "pollutionclothing.com," and began marketing his clothing over that site and his personal MySpace page.[5] Transaction records from August and September 2005 indicate that he made direct sales over the Internet to consumers in Wisconsin, Illinois, California, Iowa, and Indiana.[6] In December 2005, he registered the "Pollution Clothing" mark with the State of Oklahoma.[7] In February 2006, he began exhibiting clothing bearing the "Pollution Clothing" mark at national trade shows.[8]

### B. Plaintiff's "Pollution Denim & Co." Mark

Allen Dahan is the president of plaintiff Pollution Denim & Co., which was incorporated in the State of California in November 2006.[9] On June 22, 2006, plaintiff filed an application with the United States Patent and Trademark Office ("USPTO") for the mark "Pollution Denim & Co." on an intent to use basis.[10] No amendment to establish date of first use has since been filed.[11] In an office action dated December 5, 2006, the trademark examiner refused registration of the "Pollution Denim & Co." mark because she believed that it was too similar to two marks already registered, namely, "Denim & Co." and "Denim & Co. Easy Care" (the "'Denim & Co.' marks").[12] She also noted that the she had "found a potentially conflicting pending application" for the mark "Skin Pollution" that might, if the mark were ultimately registered, provide a further basis to deny plaintiff's application.

On February 12, 2007, plaintiff's counsel responded to the trademark examiner's office action, requesting reconsideration of her denial of his client's trademark appli-

---

In her absence, the Honorable Audrey B. Collins is presiding over this proceeding.

2. Declaration of Jordan S. Wunder ("Wunder Decl."), ¶¶ 1, 5 & Exhibit E.

3. *Id.*, ¶ 1.

4. *Id.*, ¶¶ 1, 3.

5. *Id.*, ¶ 6 & Exhibit F.

6. *Id.*, ¶ 4 & Exhibit C.

7. *Id.*, ¶ 7.

8. *Id.*, ¶ 8.

9. Declaration of Allen Dahan ("Dahan Decl."), ¶ 1. While Dahan represents that the company's "inception" occurred in "early 1995," the court takes judicial notice (see Fed.R.Evid. 201) of online records maintained by the Secretary of State indicating that the company was not incorporated until November 2006.

10. Declaration of Richard S. Siluk ("Siluk Decl."), Exhibit B.

11. The court takes judicial notice of these facts from online records maintained by the United States Patent and Trademark Office. The court notes, however, that a separate application filed by plaintiff for the single-term mark "Pollution"—which plaintiff's counsel provided to the court at the oral hearing on the order to show cause—indicates a date of first use of June 7, 2005.

12. The court takes judicial notice of these facts from online records maintained by the United States Patent and Trademark Office.

cation.[13] With respect to the "Denim & Co." marks, he argued that (1) the term "Denim & Co." is generic and thus free for all to use, and (2) even if not generic, there would be no likelihood of confusion; between "Pollution Denim & Co." and the "Denim & Co." marks. With respect to the pending application for a mark in "Skin Pollution," he argued that there would be no likelihood of contusion because, although "both companies [sic] use of the term 'Pollution' may be said to be dominant of the mark, the variation on the arrangement, coupled with the vastly different designs associated with each mark, vitiate any concern that consumers would be confused when looking at the two marks."

In a final office action dated April 7, 2007, the trademark examiner denied plaintiff's application for the mark "Pollution Denim & Co."[14] The basis for the denial was likelihood of confusion between that mark and the "Denim & Co." marks. The trademark examiner withdrew her ci-

tation to the "prior pending" "Skin Pollution" mark without further elaboration, even though the mark was entered on the principal register on December 5, 2006.[15] On July 31, 2007, plaintiff's counsel filed a letter with the USPTO seeking reconsideration of the denial of his client's trademark application.[16] In this letter, however, he did not address the likelihood of confusion between "Pollution Denim & Co." and the "Denim & Co." marks, but instead argued' exclusively that any "likelihood of confusion with the trademark 'Skin Pollution,' U.S. Registration No. 3180361" was no longer an issue because plaintiff had acquired the "Skin Pollution" mark from its owner.

## C. Plaintiff's "Skin Pollution" Mark

On July 10, 2007, plaintiff purchased the federally registered "Skin Pollution" mark from its previous owner and original registrant.[17] On July 12, 2007, the USPTO recorded the assignment.[18] The original registrant filed the "Skin Pollution" trade-

13. The court takes judicial notice of these facts from online records maintained by the United States Patent and Trademark Office.

14. Declaration of Stephen M. Doniger ("Doniger Decl."), Exhibit 2.

15. The court takes judicial notice of these facts from online records maintained by the United States Patent and Trademark Office. In plaintiff's moving papers, its counsel— which also prosecuted the "Pollution Denim & Co." trademark application before the USPTO—represents that the application was denied because of the trademark examiner's determination that the mark was confusingly similar to the "Skin Pollution" mark. (See Memorandum of Points and Authorities in Support of Plaintiff's Ex Parte Application ("Pl.'s Mem.") at 7.) Plaintiff's counsel also attests to the truth of this representation in a declaration filed in support of his client's *ex parte* application. (See Doniger Decl., ¶ 3 ("A final denial of registration [of the 'Pollution Denim & Co.'] mark was made in April 2007 because of the likelihood of confusion with

the 'Skin Pollution' mark").) As noted, however, this representation is not accurate, as the trademark examiner, in the final office action dated April 7, 2007, denied the application exclusively as a result of her determination that the "Pollution Denim & Co." mark is confusingly similar to the "Denim & Co." marks. At the oral hearing on the order to show cause, plaintiff's counsel clarified that his client filed a separate trademark application for the singer-term mark "Pollution" on December 19, 2006 and that this application—which is still pending—was initially denied in (in an office action dated April 19, 2007) because of a likelihood of confusion with the "Skin Pollution" mark. Counsel apologized to the court for any confusion caused by his oversight.

16. The court takes judicial notice of these facts from online records maintained by the United States Patent and Trademark Office.

17. Dahan Decl., ¶ 5; Doniger Decl., ¶ 4.

18. Doniger Decl., Exhibit 3.

mark application on November 28, 2005 on an intent to use basis; on March 9, 2006, the applicant filed an amendment to his application to allege that he first used the mark in commerce on January 8, 2006.[19] As noted, the mark was entered on the principal register on December 5, 2006.

### D. The Parties' Dispute

On November 9, 2006, plaintiff sent defendants a cease and desist letter.[20] In the letter, plaintiff recognizes that defendants have registered the "Pollution Clothing" mark in Oklahoma and have rights to use the mark in that market, but asserts that use of the "Pollution Clothing" mark outside of Oklahoma infringes plaintiff's "Pollution Denim & Co." mark, USPTO Serial Number 78915016.[21] Plaintiff represented that it "obtained its federal trademark with the United States Patent and Trademark Office in June of 2006."[22] The letter demands that defendants "cease and desist all uses of the trademark 'Pollution' outside the market of Oklahoma."[23]

On December 11, 2006, defendants responded to plaintiff's November 9, 2006 cease and desist letter.[24] In that letter, defendants object to plaintiff's demand that they cease and desist using the "Pollution Clothing" mark, asserting that plaintiff had merely filed a *application* for the "Pollution Denim & Co." mark with the USPTO, that the application was filed on an intent to use basis, and that defendants believed that they were the senior users of the "Pollution Clothing" mark.[25] Defendants consequently demanded that plaintiff cease and desist any plans to use the "Pollution Denim" mark in commerce and to voluntarily withdraw its trademark application.[26]

On the same day that defendants sent their response to the November 9, 2006 cease and desist letter, plaintiff's counsel sent a second cease and desist letter to defendants.[27] Plaintiff reiterated its demand that defendants cease and desist using the "Pollution Clothing" mark.[28] In addition, plaintiff noted that defendants had registered for the February 2007 "POOL Tradeshow" in Las Vegas and represented that it "will not allow [Pollution Clothing] to cause consumer confusion by using the name 'Pollution' [at the tradeshow] in violation of [plaintiff's] federal trademark."[29] Despite this threat, plaintiff did not commence this action until August 10, 2007, shortly before the *August 2007 Pool Trade Show* commenced.[30]

## II. DISCUSSION

### A. Standard Governing Entry of Preliminary Injunctive Relief

The basis for injunctive relief in the federal courts is irreparable injury and

---

19. The court takes judicial notice of these facts from online records maintained by the United States Patent and Trademark Office. The USPTO accepted the amendment on June 2, 2006.

20. Doniger Decl., Exhibit 1.

21. *Id.*

22. *Id.* As noted, however, plaintiff does not have a federally registered mark in "Pollution Denim & Co.," only a mark in "Skin Pollution," which it did not acquire until July 2007, and 20 a pending application for the mark "Pollution."

23. *Id.*

24. Wunder Decl., Exhibit G.

25. *Id.*

26. *Id.*

27. Doniger Decl., Exhibit 4.

28. *Id.*

29. *Id.*

30. Dahan Decl., ¶ 11

inadequacy of legal remedies. *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 312, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982). A court may issue an interlocutory injunction if plaintiff demonstrates " 'either: (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in its favor.' " *Clear Channel Outdoor Inc., a Delaware Corp. v. City of Los Angeles,* 340 F.3d 810, 813 (9th Cir. 2003) (quoting *Walczak v. EPL Prolong, Inc.,* 198 F.3d 725, 731 (9th Cir.1999)); see also *Miller v. Cal. Pacific Med. Ctr.,* 19 F.3d 449, 456 (9th Cir.1994).[31] "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.,* 204 F.3d 867, 874 (9th Cir.2000); see also *Baby Tam & Co. v. City of Las Vegas,* 154 F.3d 1097, 1100 (9th Cir.1998) (describing the two tests as "not separate [ ] but rather outer reaches of a single continuum"). In a trademark infringement action, however, where both parties have colorable claims to the use of a contested mark, the balance of hardships will rarely if ever "tip sharply" in one side's favor, requiring the moving party to demonstrate a "strong showing of likelihood of success" on the merits. See *MicroStrategy Inc. v. Motorola, Inc.,* 245 F.3d 335, 339–40 (4th Cir.2001) ("In this case, the grant of an injunction would cause at least as much harm to the defendant, Motorola, as its denial would to the plaintiff, MicroStrategy. Indeed, to some extent, the parties' arguments on irreparable harm present two sides of the same coin. Each maintains that it has superior rights to the use of 'Intelligence Everywhere' as a trade-

mark and that the grant, or denial, of injunctive relief will cause irreparable harm to its use of the mark").

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Mazurek v. Armstrong,* 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997) (quoting 11A Charles A. Wright, Arthur R. Miller, & Mary K. Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2948, at 129–130 (1995)); see also 5 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30:45 (4th ed. 2007) ("Plaintiff's showing of a strong case and a probability of prevailing on the merits is perhaps the most important evidentiary point on a motion for preliminary injunction. The Restatement goes so far as to state that: 'Absent special circumstances, courts will ordinarily grant a preliminary injunction in a trademark infringement action if there is strong evidence of a likelihood of confusion,' quoting RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 35, comment h (1995)").

## B. Likelihood of Success on the Merits

Trademarks represent "a limited property right in a particular word, phrase, or symbol." *New Kids on the Block v. News Am. Publishing, Inc.,* 971 F.2d 302, 306 (9th Cir.1992). To prevail on its trademark infringement claim, plaintiff must prove "(1) that it has a protectible ownership interest in [a] mark; and (2) that the defendant[s'] use of the mark [or a similar mark] is likely to cause consumer confusion, thereby infringing upon the [plaintiff's] rights to the mark." *Dep't of Parks & Recreation v. Bazaar Del Mundo*

---

**31.** A "serious question" is one as to which the moving party has "a fair chance of success on the merits." *Sierra On–Line, Inc. v. Phoenix*

*Software, Inc.,* 739 F.2d 1415, 1421 (9th Cir. 1984) (quotations omitted).

*Inc.*, 448 F.3d 1118, 1124 (9th Cir.2006) (citing *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir.1985) (en banc)).

### 1. Ownership and Validity

#### a. The "Pollution Denim & Co." Mark

■■■ With respect to the unregistered "Pollution Denim & Co." mark, the court concludes that plaintiff has failed to show likelihood of success on the merits, because it has failed to demonstrate that it has a protectible ownership interest in the mark. While plaintiff may have a "pending" trademark application for the "Pollution Denim & Co." mark, this does not entitle it to any statutory presumption of ownership, validity, or the exclusive right to use the mark in commerce. See *Glow Industries, Inc. v. Lopez*, 252 F.Supp.2d 962, 976 (C.D.Cal.2002) (Morrow, J.) (citing *Dalton Enterprises, Inc. v. Copeland Coating Co.*, No. CV 90–320, 1991 WL 117698, \*14 (N.D.N. Y. June 18, 1991)); see also *Emergency One, Inc. v. Am. Fire Eagle Engine Co., Inc.*, 332 F.3d 264, 267 (4th Cir.2003) ("When more than one user claims the exclusive right to use an unregistered trademark, priority is determined by the first actual use of the mark in a genuine commercial transaction" (collecting cases, alterations and internal quotation marks omitted)); 2 Thomas McCarthy, *supra*, § 16:2 ("If party Alpha files an [intent to use] application to register and ... has not yet obtained its registration, then Alpha has as yet no trademark rights to assert in

court against party Gamma, who began use of a similar mark after the date of Alpha's application"). Plaintiff must consequently prove priority of use in order to establish its ownership of the "Pollution Denim & Co." mark. See *Glow Industries*, 252 F.Supp.2d at 980 ("Because neither party presently holds a registration for [the mark at issue], neither can take advantage of the presumption of protectability provided by trademark registration. [Plaintiff] thus must establish that it is the senior user of [the mark] in connection with [the good sold] before it can prevail in its infringement action"). This plaintiff has failed to do. Indeed, there is absolutely no evidence in the record indicating when plaintiff first began to market and sell apparel under the "Pollution Denim & Co." mark, only that it filed a trademark application for the mark *on an intent to use* basis on June 22, 2006.[32] In contrast, Wunder has submitted unrebutted evidence that he first used the "Pollution Clothing" mark in commerce in March 2005 and began nationally marketing and selling his "Pollution Clothing" apparel in August 2005. As a result, plaintiff has failed to show likelihood of success on the merits with respect to defendants* purported infringement of its "Pollution Denim & Co." mark, because it has failed to demonstrate that it is the senior user of the mark.

#### b. The "Skin Pollution" Mark

■■■ With respect to the registered "Skin Pollution" mark, plaintiff enjoys the

---

**32.** It its moving papers, plaintiff represents that it began to market and sell designer clothing under the "Pollution Denim & Co." mark at an unspecified date in "early 2005" (see Pl.'s Mem. at 3), yet plaintiff does not cite to any evidence in the record to substantiate this assertion. In his declaration, Dahan does not specify when the company first used the mark in commerce, only that Pollution Denim & Co.'s "inception" was in "early 1995."

(Dahan Decl., ¶ 1.) "To acquire ownership of a trademark," however, "it is not enough to have invented the mark first"; instead, "the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996), as modified, 97 F.3d 1460 (9th Cir. 1996).

statutory presumption that the mark is valid, that it owns the mark, and that it has the exclusive right to use the mark in commerce. See 15 U.S.C. §§ 1057(b), 1115(a); see also *Bazaar Del Mundo*, 448 F.3d at 1124.[33] "[T]he presumption of priority enjoyed by the registrant of a mark is 'nationwide in effect.' Thus, registration of a trademark under the Lanham Act 'creates a presumption that the registrant is entitled to use the registered mark throughout the nation.'" *Emergency One*, 332 F.3d at 268–69 (citing 15 U.S.C. § 1057(c) and quoting *Draeger Oil Co. v. Uno–Ven Co.*, 314 F.3d 299, 302 (7th Cir. 2002)).[34] As a non-registrant, however, defendants "may rebut the presumption of ownership with evidence establishing [their] own prior use in commerce of the registered mark." *Id.* (citing *Sengoku Works*, 96 F.3d at 1220); see also 15 U.S.C. § 1057(c).[35] Here, Wunder concedes that the "constructive use" date of first use for the "Skin Pollution" mark is November 28, 2005, the date the trademark application was filed by plaintiffs predecessor-in interest.[36] He contends, however, that he began to use the "Pollution Clothing" mark in commerce before November 28, 2005 and consequently is

**33.** The fact that plaintiff only recently acquired the mark through an assignment from its initial registrant—which appears to have been motivated primarily by plaintiffs desire to secure priority over defendants—does not detract from the validity of the assignment. See *Glow Industries*, 252 F.Supp.2d at 982 (citing *Carnival Brand Seafood Co. v. Carnival Brands, Inc.*, 187 F.3d 1307, 1309 (11th Cir. 1999)) (holding that an assignment to achieve priority over a rival was valid); and *Money Store v. Harriscorp Finance, Inc.*, 689 F.2d 666, 677 (7th Cir.1982); see also 2 McCarthy, *supra*, § 16:5 ("[T]here is nothing improper in buying [a] trademark and associated good will of a company with an earlier priority date in order to pre-date the priority of a rival").

**34.** Even the owner of a federally registered mark, however, "is not 'entitled to injunctive relief except in the area actually penetrated' through use of the mark." *Emergency One*, 332 F.3d at 268–69 (quoting *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 932 (4th Cir.1995)); see also *Armand's Subway, Inc. v. Doctor's Associates, Inc.*, 604 F.2d 849, 849–50 (4th Cir.1979) (explaining that even though the owner of a registered trademark has an exclusive right of use that enjoys nationwide protection, "the protection is only potential in areas where the registrant in fact does not do business" and "[a] competing user could use the mark there until the registrant extended its business to the area"); *Beacon Mut. Ins. Co. v. OneBeacon Ins. Corp.*, 376 F.Supp.2d 251, 265 (D.R.I. 2005) ("While the Court has a wide range of discretion in framing an injunction in terms it deems reasonable to prevent wrongful conduct, injunctive relief should be limited to the senior user's geographic market,") citing *Citizens Fin. Group, Inc. v. Citizens National Bank of Evans City*, 383 F.3d 110, 132 (3d Cir.2004) ("[T]he senior user of a common law mark may not be able to obtain relief against the junior user in an area where it has no established trade, and hence no reputation and goodwill'" (additional citations and internal quotation marks omitted)).

**35.** As the *Sengoku Works* court noted, "[t]o acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Sengoku Works*, 96 F.3d at 1219; see also, e.g., 2 McCarthy, *supra*, § 16:1 ("[I]n the United States, the rule of priority is that ownership and priority go to the party who was first-to-use"). "The only exception is that since 1989, priority of use can be obtained by filing an application for federal registration, which, upon registration, confers a 'constructive use' date of first use." *Id.*

**36.** See, e.g., *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1051 n. 13 (9th Cir.1999) ("Because 'MovieBuff' is a federally registered trademark, [ ] [plaintiff] is entitled to a presumptive first used date equivalent to the filing date of its trademark registration application, which was August 1997"). The fact that the application was initially filed on an intent to use

the senior user of the mark, so that plaintiff is not entitled to assert its trademark claim against him.[37]

■■■ "To demonstrate priority of use, [defendant] must prove (1) that [he] actually adopted and used the mark[ ] in commerce prior to [plaintiffs] registration in such a manner that sufficiently associated the mark[ ] with [his sale of apparel] and (2) that [his] use of the marks was continuous and not interrupted." *Bazaar Del Mundo,* 448 F.3d at 1125–26 (citations omitted). "While the first use need not be extensive, the use must be bona fide and commercial in character" and "accompanied or followed by activities which would tend to indicate a continuing effort or intent to continue such use and place the product on the market on a commercial scale within a time demonstrated to be reasonable in the particular trade." *Id.* (internal quotation marks omitted); see also *Chance v. Pac–Tel Teletrac Inc.,* 242 F.3d 1151, 1157 (9th Cir.2001) ("[W]here a mark has been placed on goods, a single sale or shipment may be sufficient to support an application to register the mark, providing that this shipment or sale has the color of a bona fide transaction and is accompanied or followed by activities which would tend to indicate a continuing effort of intent to continue such use and place the product on the market on a commercial scale within a time demon-

strated to be reasonable in the particular trade," citing *Hydro–Dynamics, Inc. v. George Putnam & Co.,* 811 F.2d 1470, 1472–74 (Fed.Cir.1987)); *Blue Bell, Inc. v. Farah Manufacturing Co., Inc.,* 508 F.2d 1260, 1265 (5th Cir.1975) ("The exclusive right to a trademark belongs to one who first uses it in connection with specified goods. Such use need not have gained wide public recognition, and even a single use in trade may sustain trademark rights if followed by continuous commercial utilization" (citations omitted)); 2 McCarthy, *supra,* § 16:6 ("[E]ven the most robust and strong mark may have been launched in the marketplace with a small number of sales or a modest level of pre-sales promotional advertising. If such small steps are followed up with[in] a reasonable time by a continually increasing scale of sales, the first sales should be counted for purposes of establishing priority of use," citing *Allard Enterprises Inc. v. Advanced Programming Resources, Inc.,* 146 F.3d 350, 358 (6th Cir.1998) ("As long as there is a genuine use of the mark in commerce, however, ownership may be established even if the first uses are not extensive and do not result in deep market penetration or widespread recognition")).[38]

■■■ Here, Wunder has submitted unrebutted evidence that he has continuously used the "Pollution Clothing" mark in connection with his sale of apparel since its

**37.** Memorandum in Opposition to Plaintiff's Application for a Preliminary Injunction at 5–6.

basis does not alter the fact that the "constructive use" date of first use is the date that the trademark application was filed. See 2 McCarthy, *supra,* § 16:16; see also *CreAgri, Inc. v. USANA Health Sciences, Inc.,* 474 F.3d 626, 629 (9th Cir.2007) ("Under 15 U.S.C. §§ 1051(b), 1051(d), and 1057(c), as long as an applicant's mark is eventually granted registration on the principal register, and as long as the applicant does, in fact, use the mark in commerce within a set period of time thereafter, the filing of an intent to use application constitutes 'constructive use of the mark, conferring a right of priority, nationwide in effect' ").

**38.** But see *Lucent Info. Management, Inc. v. Lucent Techs., Inc.,* 186 F.3d 311 (3d Cir. 1999) (holding that plaintiffs sales presentations and single sale prior to defendant's intent-to-use trademark filing were insufficient to establish priority). McCarthy explains that the *Lucent* decision creates a conflict with *Allard* and departs from the long-standing rule that initial sales and advertising need not be extensive and need not result in widespread recognition. See 2 McCarthy, *supra,*

introduction in March 2005. He has also submitted unrebutted evidence that he began nationally marketing and selling clothing bearing the "Pollution Clothing" mark in August 2005, and that shortly thereafter—in February 2006—he began exhibited his clothing at what plaintiff concedes [39] is one of the nation's major, semi-annual tradeshows. In addition, according to plaintiffs complaint, defendants "Pollution Clothing" apparel is now being sold at multiple California-based retailers. Based upon the limited amount of evidence in the record, the court believes it likely that plaintiff will not be able to take advantage of the statutory presumption of ownership of the "Skin Pollution" mark, because it appears that defendants may be the senior users of the "Pollution Clothing" mark. While defendants' initial use of the mark may not have been "extensive," limited only to a small number of retailers in greater Oklahoma City, the evidence in the record indicates that defendants* use of the mark was bona fide and commercial in character, and that defendants promptly expanded into the national market for retail apparel after the initial introduction of the "Pollution Clothing" mark in 2005.[40] The court consequently concludes that plaintiff has failed to show likelihood of success on the merits with respect to defendants' purported infringement of its "Skin Pollution" mark, because it has failed to rebut defendants' contention that they are the senior user of the "Pollution Clothing" mark. Cf. *Allard*, 146 F.3d at 359 (finding that prior use was established when the defendant used the contested trademark "on at least one fax, at least one resume, and in numerous other solicitations").[41]

## 2. Likelihood of Confusion

Because the court concludes that plaintiff has failed to demonstrate that it owns

---

§ 16:6. This court adopts the traditional rule as set forth in *Allard*, given the Ninth Circuit's recent articulation of that rule in *Bazaar Del Mundo*.

**39.** See Pl.'s Mem. at 9

**40.** Citing *Chance*, plaintiff's counsel argued at the oral hearing on the order to show cause that mere "token" use is insufficient to constitute "use in commerce" for purposes of determining priority of use between two competing claimants to a trademark. While this proposition of law is correct, see *Chance*, 242 F.3d at 1157, nothing in the record indicates that defendants' use of the "Pollution Clothing" mark was "token," i.e., was undertaken without bona fide commercial intent in a mere attempt to reserve the mark for future use. Rather, as noted, the evidence indicates that defendants* use of the "Pollution Clothing" mark was bona fide and commercial in character, and that defendants promptly expanded into the national market for retail apparel after the initial introduction of the mark in 2005.

**41.** Cf. also *Jaro Transp. Services, Inc. v. Grandy*, No. CV 03–1227, 2006 WL 2553424, *8

(N.D.Ohio Sept. 5, 2006) ("[Plaintiffs'] prior actual use of the Dalko mark is apparent and is not even meaningfully contested by [defendants]. Plaintiffs' company was registered under the name Dalko Logistics in 2001; Dalko Logistics communicated with its customers and prospective customers using Dalko stationary since 2002; and the company earned an income over $1 million almost a year prior to Dalko Resources starting its operations. There is no support in any of the cases cited by [defendants] for the substitution of the finding of actual prior use with [defendants'] proposed inordinate reliance on the volume of advertising by a later user for purposes of determining trademark ownership. Indeed, if [defendants'] argument were accurate, a subsequent well-financed user could simply adopt a less prosperous prior user's trademark, and by investing heavily in marketing and promotion, strip the latter of his lawfully obtained common law 18 trademark rights. Because [plaintiffs'] prior use and ownership of the Dalko trademark are thus established, [defendants'] promotional endeavors or its clients' association of the name Dalko with the [defendants] are not relevant to the disposition of the claim").

a protectible interest in any trademark, it need not address whether plaintiff has demonstrated a likelihood of consumer confusion. See, e.g., *Hunt Masters, Inc. v. Landry's Seafood Restaurant, Inc.*, 240 F.3d 251, 255 n. 3 (4th Cir.2001) (declining to address likelihood of confusion after the court concluded that mark was generic and hence not protectible as a trademark); *Boston Beer Co. Ltd. Partnership v. Slesar Bros. Brewing Co., Inc.*, 9 F.3d 175, 183 (1st Cir.1993) ("The district court found that appellant's marks were not entitled to trademark protection because they had not attained secondary meaning. Accordingly, that court did not need to address the question of likelihood of confusion. . . . Because we affirm the district court's finding on secondary meaning, we need not address the issue of likelihood of confusion"); cf. *Shakey's Inc. v. Covalt*, 704 F.2d 426, 430 n. 5 (9th Cir.1983) (declining to address whether mark was protectible as a trademark after the court concluded that there was no likelihood of confusion).[42]

### C.  Irreparable Harm

Because the court has found that plaintiff has failed to demonstrate that it is likely to prevail on its trademark infringe-ment claim, it also need not address its showing of irreparable harm. See, e.g., *Stanley v. University of S. Cal.*, 13 F.3d 1313, 1319 (9th Cir.1994) (" '[E]ven if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits,' " quoting *Martin v. Int'l Olympic Committee*, 740 F.2d 670, 674 (9th Cir.1984)); see also *MicroStrategy*, 245 F.3d at 340 ("In trademark cases, a plaintiff's burden [in seeking a preliminary injunction] may be even greater [than in other cases]. . . . To doubt is to deny; thus, if there is doubt as to the probability of plaintiff's ultimate success on the merits, the preliminary injunction must be denied" (alterations and internal quotation marks omitted)); *Sal Tinnerello & Sons, Inc. v. Town of Stonington*, 141 F.3d 46, 56 (2d Cir.1998) ("Because [plaintiff] has failed to show a likelihood of success on the merits of either of its two claims, we need not address the issue of whether it has demonstrated irreparable harm"); *Tenacre Foundation v. INS*, 78 F.3d 693, 696 (D.C.Cir.1996) ("We need not address [plaintiff's] claims on irreparable harm, because we find that . . . there is no basis for a judgment at this juncture that [plaintiff] is likely to succeed on the merits

---

**42.**  With respect to the "Skin Pollution" mark, however, the court notes that plaintiff has failed to submit any evidence that it has ever actually used (or plans to use) that mark in connection with its apparel business. This would likely prevent it from demonstrating a likelihood of confusion with respect to the "Skin Pollution" mark. Cf. *Plough, Inc. v. Kreis Laboratories*, 314 F.2d 635, 639–40 (9th Cir.1963) ("We agree with appellant that the question is not whether there was confusion proved between the protected marks and the alleged infringing words, but whether there was a likelihood of such confusion existing. But one of the better ways to prove likelihood of confusion in the future is to prove it existed in the past. We cannot say there does exist a likelihood of any confusion, on the sparse record before this court. . . . Appellant here has never used [certain of its trademarks] in any aspect of its business, either prior to or subsequent to the injunction. In fact, appellant had brought out new [ ] products after the purchase of these [trademarks], but had, by its own choice, preferred to use, and had used, [other] 28 trademarks. . . . By its filing of this proceeding, appellant attempts, not to prevent competition with any product it produces under [its unused trademarks] (for it produces none), but to prevent the marketing in the competitive market of any product marked so that it might remind one of [the mark it actually uses]. But as both the majority and the dissent in this case recognize— 'The portion of the decree relating to [the mark actually used] is irrelevant here.' Yet that is the only competition here involved, under the facts of this case").

of any of its claims. In short, in the posture in which the case now stands, it is clear that a preliminary injunction is unwarranted").

## III. CONCLUSION

For the reasons stated, the court discharges the order to show cause why a preliminary injunction should not issue and denies plaintiff's request for a preliminary injunction. If defendants have incurred any damages due to the court's entry of the temporary restraining order on August 10, 2007, they are directed to file an application for damages, with supporting declarations and exhibits, within **20 days** of the entry of this order. If no such application is filed, the court will dissolve the $10,000 bond currently secured by plaintiff through Bond Services of California as security for the payment of any damages that defendants may be entitled to recover due to the entry of the temporary restraining order.