**EMERGENCY ONE, INCORPORATED, d/b/a American Eagle Fire Apparatus Company, Incorporated, Plaintiff–Appellant,**

v.

**AMERICAN FIRE EAGLE ENGINE COMPANY, INCORPORATED, Defendant–Appellee.**

No. 02–1483.

United States Court of Appeals, Fourth Circuit.

Argued: Jan. 21, 2003.

Decided: June 16, 2003.

**ARGUED:** Brendan Joseph O'Rourke, Proskauer Rose, L.L.P., New York, New York, for Appellant. L. Lawton Rogers, III, Duane Morris, L.L.P., Washington, D.C., for Appellee. **ON BRIEF:** Hugh Stevens, Everett, Gaskins, Hancock & Stevens, L.L.P., Raleigh, North Carolina, for Appellant. Patrick D. McPherson, Mark C. Comtois, Donald J. English, Duane Morris, L.L.P., Washington, D.C.; Mark A. Finkelstein, Herring, Mcbennett, Mills & Finkelstein, Raleigh, North Carolina, for Appellee.

Before WILKINS, Chief Judge, and MICHAEL and TRAXLER, Circuit Judges.

Vacated and remanded by published opinion. Judge TRAXLER wrote the opinion, in which Chief Judge WILKINS and Judge MICHAEL joined.

## OPINION

TRAXLER, Circuit Judge:

Emergency One, Inc. ("E–One") appeals from a nationwide injunction entered by the district court prohibiting E–One from

using its AMERICAN EAGLE mark in connection with the sale of its fire trucks or from otherwise infringing upon the trademark rights of American FireEagle, Ltd. ("AFE"). We vacate the injunction and remand the case for further proceedings.

## I.

E–One, a manufacturer of fire trucks and rescue vehicles, sued AFE for trademark infringement. The parties agree that AFE's AMERICAN FIREEAGLE mark, which depicts a bald eagle superimposed over an American flag, and E–One's AMERICAN EAGLE mark "are sufficiently similar as to create a likelihood of confusion among potential purchasers of fire trucks." J.A. 129. AFE counterclaimed on the grounds that E–One had abandoned its mark, that AFE had then acquired ownership through use of the mark, and that E–One's subsequent renewed use of the mark infringed on AFE's common-law trademark rights. A jury initially determined that E–One had not abandoned the AMERICAN EAGLE mark and, therefore, AFE was infringing on E–One's mark. Based on the verdict, the district court entered an injunction against AFE's continued use of its AMERICAN FIREEAGLE mark. The injunction was unlimited in its geographical scope.

AFE appealed. This court concluded that there was sufficient evidence for a jury to find "that E–One had discontinued use of the AMERICAN EAGLE mark." *Emergency One, Inc. v. American FireEagle, Ltd.*, 228 F.3d 531, 537 (4th Cir.2000) ("*American FireEagle I*"). We explained, however, that "the case does not end there because E–One did produce evidence that it intended to resume use of the mark on fire trucks." *Id.; see* 15 U.S.C.A. § 1127 (West Supp.2002) (providing that a trade-

mark is abandoned when "its use has been discontinued with intent not to resume such use"). On the issue of E–One's intent to resume use of the mark, we held that the jury instructions "fail[ed] to instruct the jury … that in order to avoid abandonment a trademark owner who discontinues use of the mark must have an intent to resume use *in the reasonably foreseeable future.*" *American FireEagle I*, 228 F.3d at 540 (emphasis added). We also concluded that the jury instructions failed to advise the jury that "the type of use that is relevant to determining whether a trademark owner has discontinued use is use *in the course of trade in a particular good.*" *Id.* (emphasis added). We vacated the judgment and the injunction and remanded for a new trial.

Upon remand, the district court granted E–One's request for bifurcation of the trial. The only issue submitted to the jury was whether E–One had abandoned its rights in the AMERICAN EAGLE mark prior to the time that AFE began using its similar mark. Specifically, the second jury was asked to decide if E–One "intend[ed] to resume use of the American Eagle trademark on fire trucks in the reasonably foreseeable future." J.A. 205. The jury determined that E–One had not intended to resume use of the mark. Following the verdict, AFE requested that the district court impose an unlimited injunction, virtually identical to the one imposed against AFE after the first trial, against E–One's continued use of its mark. E–One objected, however, arguing that a nationwide injunction was inappropriate and that an evidentiary hearing was necessary to establish the proper geographical scope of the injunction. The district court concluded that E–One had waived the right to challenge the geographical scope of the injunction, that E–One was therefore not entitled to an evidentiary hearing on the

issue, and that a nationwide injunction was appropriate. The district court noted that jury issues still remained with respect to whether AFE was entitled to monetary relief from E–One on AFE's trademark infringement claim or its claims under the North Carolina Unfair and Deceptive Trade Practices Act, *see* N.C. Gen.Stat. § 75–1.1, and North Carolina common law. E–One immediately appealed the district court's entry of the injunction. *See* 28 U.S.C.A. § 1292(a)(1) (West 1993).

## II.

■ We review the entry of an injunction by the district court for abuse of discretion. *See Wilson v. CHAMPUS*, 65 F.3d 361, 363–64 (4th Cir.1995). E–One argues that because common law trademark rights extend only to the geographical areas in which AFE has made *bona fide* use of the mark, AFE is not entitled to injunctive relief in any market where it has not established such use. E–One asserts that the district court therefore abused its discretion by entering a blanket, nationwide injunction against E–One without any evidence of the localities in which AFE used the mark.

### A.

■ Before considering the scope of the injunction entered against E–One, a brief review of the governing principles of trademark law is in order. AFE and E–One both asserted trademark rights in an unregistered mark. Common law determines who enjoys the exclusive right to use an unregistered trademark, the extent of such rights, and the proper geographical scope of any injunctive relief necessary to protect against the infringement of such rights. *See Spartan Food Sys., Inc. v.*

*HFS Corp.*, 813 F.2d 1279, 1282 (4th Cir. 1987) (explaining that the "geographical extent" of an injunction against infringement of an unregistered mark is "governed by common law as expounded by the Supreme Court").

■ At common law, trademark ownership is acquired by actual use of the mark in a given market. *See United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97–98, 39 S.Ct. 48, 63 L.Ed. 141 (1918). "To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir.1996); *see Homeowners Group, Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1105 (6th Cir.1991) ("[O]wnership rights flow only from prior appropriation and actual use in the market."); *see generally* 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, §§ 16:1, 16.18 (4th ed.2003). The owner of a mark acquires "both the right to use a particular mark and the right to prevent others from using the same or a confusingly similar mark." *Homeowners Group*, 931 F.2d at 1106. Accordingly, trademark ownership confers an exclusive right to use the mark. *See United Drug*, 248 U.S. at 98, 39 S.Ct. 48.[1]

■ When more than one user claims the exclusive right to use an unregistered trademark, priority is determined by "the first actual use of [the] mark in a genuine commercial transaction." *Allard Enters., Inc. v. Advanced Programming Res., Inc.*, 146 F.3d 350, 358 (6th Cir.1998); *see United Drug*, 248 U.S. at 100, 39 S.Ct. 48

---

**1.** Federal registration of a mark does not establish ownership rights in the mark; rights in a registered mark are acquired through actual use, just as for unregistered marks. *See Homeowners Group*, 931 F.2d at 1105.

("[T]he general rule is that, as between conflicting claimants to the right to use the same mark, priority of appropriation determines the question."); *see also Blue Bell, Inc. v. Farah Mfg. Co.,* 508 F.2d 1260, 1265 (5th Cir.1975) ("The exclusive right to a trademark belongs to one who first uses it in connection with specified goods."); *Sweetarts v. Sunline, Inc.,* 380 F.2d 923, 926 (8th Cir.1967) (same). The first user, then, to appropriate and use a particular mark—the "senior" user—generally has priority to use the mark to the exclusion of any subsequent—or junior—users. *See Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc.,* 186 F.3d 311, 316 (3d Cir.1999); *see also* 4 McCarthy, *supra,* § 26.5 at 11–12. And, priority must be established before an injunction can be entered against an infringing trademark user. *See Scott Paper Co. v. Scott's Liquid Gold, Inc.,* 589 F.2d 1225, 1231 (3d Cir.1978) ("[R]elief is only available if the plaintiff establishes priority."). The priority to use a mark, however, can be lost through abandonment. *See American FireEagle I,* 228 F.3d at 535–36. "Once abandoned, a mark may be seized immediately and the person ... doing so may" establish "priority of use and ownership under the basic rules of trademark priority." 2 McCarthy, *supra,* § 17:2 at 3.

■ The territorial extent of ownership rights in an unregistered mark is not unlimited. *See Spartan Food,* 813 F.2d at 1282. In *Hanover Star Milling Co. v. Metcalf,* 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1916), the Supreme Court explained the limited scope of common law trademark rights:

Into whatever markets the use of a trademark has extended, or its meaning has become known, there will the manufacturer or trader whose trade is pirated by an infringing use be entitled to protection and redress. But this is not to say that the proprietor of a trademark ... can monopolize markets that his trade has never reached.... [S]ince it is the trade, and not the mark, that is to be protected, a trademark ... extends to every market where the trader's goods have become known and identified by his use of the mark. But the mark, of itself, cannot travel to markets where there is no article to wear the badge and no trader to offer the article.

*Id.* at 415–16, 36 S.Ct. 357 (internal quotation marks omitted); *see also United Drug,* 248 U.S. at 98, 39 S.Ct. 48. At common law, therefore, the exclusive right to use a mark is "limited to areas where [the mark] had been used and the claimant of the mark had carried on business." *Armand's Subway, Inc. v. Doctor's Assocs., Inc.,* 604 F.2d 849, 849 (4th Cir.1979); *see Spartan Food,* 813 F.2d at 1282 ("The common law rights are restricted to the locality where the mark is used and to the area of probable expansion.").[2]

■ Although federal registration of a mark does not itself confer ownership rights, registration constitutes "prima facie evidence of the validity of the registered mark ..., of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark...." 15 U.S.C.A. § 1057(b) (West 1997). Moreover, the presumption of priority enjoyed by the registrant of a mark is "nationwide in effect." 15 U.S.C.A. § 1057(c). Thus,

---

**2.** This court has recognized that the area of "use" for purposes of establishing common-law trademark rights may include not only the locality where the mark is actually being used but also areas where use of the mark is likely to expand but has not yet done so. *See,*

*e.g., Spartan Food,* 813 F.2d at 1283 (explaining that "common law rights are restricted to the locality where the mark is used and to the area of probable expansion" as determined by the application of the "zone of natural expansion" or "market penetration" theories).

registration of a trademark under the Lanham Act "creates a presumption that the registrant is entitled to use the registered mark throughout the nation." *Draeger Oil Co. v. Uno–Ven Co.*, 314 F.3d 299, 302 (7th Cir.2002). By contrast, a user claiming ownership of a mark under common-law principles does not enjoy the benefit of the presumptions conferred by registration and must "establish his right to exclusive use"; in effect, registration "shift[s] the burden of proof from the plaintiff ... to the defendant, who must introduce sufficient evidence to rebut the presumption of plaintiff's right to such [exclusive] use." *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1529 (4th Cir.1984) (internal quotation marks omitted). Accordingly, a plaintiff asserting a claim of infringement against common-law trademark ownership rights bears the burden of establishing its exclusive right to use the mark by actual use in a given territory.

■■■ The nature of common-law trademark rights in large measure determines the appropriate scope of any injunctive relief. Thus, the owner of common-law trademark rights in an unregistered mark is not entitled to injunctive relief in those localities where it has failed to establish actual use of the mark. *See Spartan Food*, 813 F.2d at 1282–84. By limiting injunctive relief to the territory where the mark is being used, courts ensure that a trademark does not precede its owner into "markets that [the owner's] trade has never reached." *Hanover Milling*, 240 U.S. at 416, 36 S.Ct. 357. For this reason, even the owner of a federally registered mark— who enjoys the presumption of nationwide priority—is not "entitled to injunctive re-

lief except in the area actually penetrated" through use of the mark. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 932 (4th Cir. 1995) (internal quotation marks omitted).[3] Accordingly, even though the senior user of an unregistered mark has established priority over a junior user through prior appropriation, injunctive relief is appropriate only in those areas where the senior user can show sufficient actual use. *See Spartan Food*, 813 F.2d at 1283–84 (reversing the award of injunctive relief to the extent that it covered territory beyond the area in which the senior user established actual use); *cf. Armand's Subway*, 604 F.2d at 849–50 (explaining that even though the owner of a registered trademark has an exclusive right of use that enjoys nationwide protection, "the protection is only potential in areas where the registrant in fact does not do business" and "[a] competing user could use the mark there until the registrant extended its business to the area").

### B.

AFE established its priority in the mark when the jury on remand determined that, after discontinuing use of the mark, E–One had not intended to resume use of the mark in the reasonably foreseeable future. *See* 2 McCarthy, *supra*, § 17:2 at 3. For all practical purposes, the abandonment determination also settled the issue of liability, *i.e.*, who had priority in the mark. E–One conceded to the district court that AFE was "the prevailing party on the issue of the ownership of the trademark." J.A. 159. Because the mark was not registered, however, the common law rights of

---

**3.** The owner of a registered mark "has a nationwide *right*, but the injunctive *remedy* does not ripen until the registrant shows a likelihood of entry into the disputed territory.... [The junior user's] use of the mark

can continue only so long as the federal registrant remains outside the market area." *Lone Star*, 43 F.3d at 932 (internal quotation marks omitted).

AFE in the abandoned mark were "restricted to the locality where the mark [was] used and to the area of probable expansion." *Spartan Food*, 813 F.2d at 1282. Thus, any injunctive relief to which AFE was entitled was also limited to the areas where AFE used the mark. The parties stipulated that "[b]oth E–One and AFE market and sell certain types of fire trucks in the Eastern District of North Carolina." J.A. 129. Although AFE claimed that it was entitled to injunctive relief much broader in scope than the Eastern District of North Carolina, AFE has not directed us to any facts it presented to the district court to establish the extent of its use of the mark. Actually, the only facts regarding the extent of AFE's use that were presented to the court were presented by E–One, which suggested AFE might be entitled, at most, to injunctive relief covering North Carolina, South Carolina, West Virginia and Michigan, based on sales volume. In any event, there was no factual basis in the record from which the court could conclude that a nationwide injunction was appropriate. *See Spartan Food*, 813 F.2d at 1283–84 (vacating injunction to the extent it covered an area for which the senior user failed to prove sufficient use of the mark). We conclude that there is an insufficient factual basis to support the nationwide scope of the injunction and, therefore, that the district court abused its discretion. *See, e.g., Allard*, 146 F.3d at 361 (vacating "an injunction of national scale" where the court failed to "set[ ] forth the geographic scope of defendants' trade territory"); *Natural Footwear Ltd. v. Hart, Schaffner & Marx*, 760 F.2d 1383, 1397 (3rd Cir.1985) (vacating nationwide injunction where the district court failed "to scrutinize the extent of [the senior user's] sales, advertising, and reputation on either a state-by-state or region-by-region basis").

## III.

■ AFE argues that the district court correctly determined that E–One "waived its right to contest the geographic scope of [the] injunction." J.A. 292. The district court did not elaborate on the basis for its conclusion that E–One waived its right to challenge the injunction. However, AFE presented to the district court the same waiver argument it makes on appeal—that E–One's challenge to the territorial scope of the injunction is effectively an affirmative defense that E–One failed to raise and thus waived. Specifically, AFE argues that in challenging the scope of the injunction, E–One was in fact claiming to be an "innocent" or "good-faith remote user" of the mark. AFE asserts that this is an affirmative defense which is subject to waiver. *See Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 612 (4th Cir. 1999) ("[A] party's failure to raise an affirmative defense in the appropriate pleading" generally "results in waiver"). E–One responds that its challenge went to the scope of the remedy imposed by the district court as opposed to liability.

In order to accept AFE's argument, we must determine that a good-faith remote user claim qualifies as an affirmative defense; that E–One is actually raising such a defense; but that E–One waived its ability to do so by not alleging in its pleadings that it was a good-faith remote user of the mark. We conclude that although a good-faith remote user claim can be categorized as an affirmative defense, E–One is not technically raising this claim and, therefore, has not waived its ability to challenge the injunction.

### A.

■ As previously explained, the senior user of a mark acquires priority over a

subsequent user and thereby enjoys the exclusive right to use the mark within the "areas where [the mark] had been used and the claimant of the mark had carried on business." *Armand's Subway*, 604 F.2d at 849; *see Hanover Star Milling*, 240 U.S. at 415–16, 36 S.Ct. 357. The "innocent" or "good-faith remote user" defense stands as an exception to the general rule that the senior user, by virtue of its prior appropriation, has superior rights in the mark over a party that subsequently begins using the mark. The legal foundation that underlies this defense derives from the *Tea Rose/Rectanus* doctrine, which blends several common law trademark principles established by the Supreme Court in *Hanover Star Milling Company v. Metcalf* and *United Drug Company v. Theodore Rectanus Company.* Under the *Tea Rose/Rectanus* doctrine, "the first user of a common law trademark may not oust a later user's good faith use of an infringing mark in a market where the first user's products or services are not sold." *Nat'l Ass'n for Healthcare Communications, Inc. v. Cent. Ark. Area Agency on Aging, Inc.*, 257 F.3d 732, 735 (8th Cir.2001). In other words, "a junior user, who in good faith adopted a mark for use at a place remote from the place of senior use of a similar mark, has a right to continue its use of the mark superior to the right of the senior user." *Spartan Food*, 813 F.2d at 1282. Thus, even though a junior user is, by definition, not the first to ever use a mark, it may assert the exclusive right to use a mark in a particular area (1) if the area was "geographically remote" from the senior user's market at the time that the junior user appropriated the mark and (2) if the junior user was acting in good faith at the time.

A use is geographically remote if the mark was used in an area "where the senior user's mark was not known such that there could be confusion as to source." *Best Cellars, Inc. v. Wine Made Simple,*

*Inc.*, No. 01 Civ. 11780, 2003 WL 1212815, *19 (S.D.N.Y. March 14, 2003) (citing *Rectanus*, 248 U.S. at 100, 39 S.Ct. 48). With respect to the good-faith requirement, courts are divided on whether the junior user must establish a lack of actual knowledge that the mark was already in use, *see* 4 J. McCarthy, *supra*, § 26:9 (majority view), or merely that there was no intent to infringe, *see id.* at § 26:10 (minority view). *Compare Money Store v. Harriscorp Finance, Inc.*, 689 F.2d 666, 674 (7th Cir.1982) ("A good faith junior user is one who begins using a mark with no knowledge that someone else is already using it."), *with C.P. Interests, Inc. v. California Pools, Inc.*, 238 F.3d 690, 700 (5th Cir. 2001) ("The Fifth Circuit, however, has not expressly joined this majority view, and our past precedent implies a test to the contrary—specifically, that knowledge of use is but one factor in a good faith inquiry."). Because resolution of this issue is not necessary to our decision, we leave it for another day.

Whether a good-faith remote user claim must be pled affirmatively under the Federal Rules of Civil Procedure depends upon whether it raises "matter constituting an avoidance or affirmative defense." Fed.R.Civ.P. 8(c). An affirmative defense is the " 'defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true.' " *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2nd Cir.2003) (quoting Black's Law Dictionary 430 (7th ed.1999)). Generally speaking, affirmative defenses "share[ ] the common characteristic of a bar to the right of recovery even if the general complaint were more or less admitted to." *Wolf v. Reliance Standard Life Ins. Co.*, 71 F.3d 444, 449 (1st Cir. 1995) (internal quotation marks omitted).

A good-faith remote user claim qualifies as an affirmative defense. The plaintiff in

an action for infringement of an unregistered mark must prove "the validity and its ownership of the mark as part of its larger burden in a trademark infringement action ... to prove that it has a valid, protectable trademark and that the defendant is infringing its mark." *America Online, Inc. v. AT & T Corp.*, 243 F.3d 812, 819 (4th Cir.), *cert. dismissed*, 534 U.S. 946, 122 S.Ct. 388, 151 L.Ed.2d 256 (2001). Arguably, a defendant who asserts a good-faith remote user defense in a given territory can concede the essential elements of an infringement claim—that plaintiff is the owner and senior user of a valid trademark and that the defendant's competing mark is confusingly similar or likely to create confusion—and nevertheless defeat the plaintiff's claim of infringement in the defendant's territory by demonstrating good faith and remote use. In that respect, a good-faith remote user claim is typical of an affirmative defense because it "shares the common characteristic of ... bar[ring] ... the right [to relief] even if the general complaint were more or less admitted to." *Wolf*, 71 F.3d at 449 (internal quotation marks omitted). In alleging that the defendant's use of the mark in the disputed territory was remote and in good faith, a defendant is raising matters that are distinct from, and not merely in response to, the elements of an infringement claim. *Cf. Lone Star*, 43 F.3d at 930 & n. 11 (classifying the defense set forth in 15 U.S.C.A. § 1115(b)(5), a statutory analogue to the common-law good-faith user defense, as an affirmative defense).[4]

## B.

Even if the good-faith remote user defense is technically one that should be pled affirmatively, we conclude that E–One is not, in fact, asserting this defense. Rather, E–One's objection goes to the scope of the remedy—specifically, the lack of a factual basis to support a nationwide injunction. The good-faith remote user defense applies when there is a priority dispute between two parties that have been using the mark in the same territory. The junior user of the mark uses this doctrine to argue that it cannot be ousted from its territory by the owner and senior user of the mark:

> [T]he national senior user of a mark cannot oust a geographically remote good-faith user who has used the mark first in a remote trade area. When the national senior user tries to enter the remote area, its rights must give way to the rights built up in good faith by a local user.

4 McCarthy, *supra*, § 26:4 at 9. In fact, a junior user who successfully defends against an infringement action by asserting this defense may itself be entitled to injunctive relief against the senior user. *See Spartan Food*, 813 F.2d at 1282–84. A defendant asserting good faith remote use is necessarily claiming priority over the plaintiff and the exclusive right to use the mark in a given territory where the plaintiff also claims priority.

By contrast, in objecting to the scope of the injunction below, E–One contended simply that "far more limited injunctive relief" was warranted. J.A. 227. E–One, as we understand its argument, does not deny that AFE, as a result of the jury verdict, has priority and the exclusive right

4. The statutory version of the good-faith remote user doctrine, incorporated by the Lanham Act as a defense to an infringement claim by the owner of a registered mark that has become incontestable, is not identical to the common law version. For example, the Lanham Act appears to have eliminated "remoteness" as a requirement for the defense. *See* 15 U.S.C.A. § 1115(b)(5) (West 1998 & Supp.2003).

to use the mark in those areas where AFE is able to establish actual use sufficient to confer common law trademark rights. In fact, E–One even acknowledged to the district court that there might be four such markets—Michigan, West Virginia, North Carolina, and South Carolina. Thus, E–One does not contend that AFE is not entitled to injunctive relief where AFE used the mark, but only that the injunctive relief awarded was too broad. We are satisfied that, viewed in its entirety, E–One's challenge to the extent of AFE's territorial rights is not an affirmative defense to liability but an objection to the extent of the remedy imposed by the district court. Unlike an affirmative defense, a mere challenge to the scope of injunctive relief need not be set forth affirmatively in the pleadings, and the failure to do so does not amount to a waiver of the argument. *See Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 674 (5th Cir.2000) ("[C]ourts in trademark cases have a responsibility to tailor the relief to the violation" and "[a]ppellate courts have a similar responsibility and have reviewed the breadth of injunctive relief in the face of . . . waiver arguments."); *Allard Enters.*, 146 F.3d at 360 (permitting appellant, after the notice of appeal had been filed, to raise its initial challenge to the nationwide scope of the injunction.).

We also reject AFE's argument that E–One waived its challenge to the injunction because it did not identify, for purposes of the pre-trial order, the geographical scope of AFE's common law trademark rights as an issue to be resolved by the jury. Generally speaking, the pre-trial order "controls the scope and course of the trial, and, [i]f a claim or issue is omitted from the order, it is waived, even if it appeared in the complaint." *Sobley v. Southern Natural Gas Co.*, 302 F.3d 325, 333 (5th Cir. 2002) (internal quotation marks omitted). AFE points out that the only issue for determination at trial was that of abandonment which, in turn, determined liability. AFE argues that E–One therefore failed to inform the district court that a determination of the geographical extent of AFE's use of the mark was an additional prerequisite for resolving liability.

As before, this argument misapprehends the nature of E–One's appeal. Ownership of a common law mark does not necessarily afford the owner nationwide rights, as explained in detail above. Even the owner of a *registered* mark, who enjoys a presumption of nationwide priority to which AFE is not entitled, is not automatically entitled to national injunctive relief. *See Armand's Subway*, 604 F.2d at 849–50. Therefore, the question of abandonment or post-abandonment ownership was not determinative of appropriate injunctive relief, and E–One's failure to raise any issues pertaining to liability, *i.e.*, ownership of the mark, did not waive its challenge to the equitable remedy. *See Westchester Media*, 214 F.3d at 674; *Allard*, 146 F.3d at 360. We likewise conclude that E–One did not waive its challenge to the scope of the injunction by failing to raise it prior to trial, and that the case should be remanded to allow the district court to reconsider the scope of the injunction.[5]

## IV.

Finally, AFE contends that E–One is estopped from challenging the geographical scope of the injunction because (1) it "conceded" in its pleadings that AFE con-

---

5. Although AFE suggests that to allow E–One to pursue its line of attack would be prejudicial because it would stretch AFE's limited resources to require a third proceeding, AFE represented to the trial court that it was engaged in "national use and [was] prepared to show that" and that a hearing on the issue would last "one day." J.A. 173.

ducted business throughout the United States and (2) it represented to the court during the injunction hearing that all liability issues had been tried. We cannot agree.

AFE's argument appears to rely on the doctrine of judicial estoppel, which protects against "improper manipulation of the judiciary." *Folio v. City of Clarksburg,* 134 F.3d 1211, 1217 (4th Cir. 1998). Judicial estoppel applies if the party to be estopped intentionally asserts a position of fact that is inconsistent with a factual position taken during previous litigation. *See id.* at 1217–18. For this doctrine to apply, moreover, "the prior position must have been accepted by the court in the first proceeding." *Id.* at 1218. We do not perceive any such inconsistent positions of fact being asserted by E–One. In its counterclaim against E–One for trademark infringement, AFE alleged that it used the mark "in North Carolina and throughout the United States." J.A. 75. In reply, E–One admitted only that AFE sold fire trucks with the mark in North Carolina; E–One asserted that it was "without sufficient information either to admit or deny the remaining allegations" that AFE used the mark throughout the United States. J.A. 85. Likewise, E–One made no representations at the hearing that would support AFE's estoppel argument. AFE claims that E–One represented to the district court that, following the trial, the only remaining question of fact to be resolved was whether and to what extent damages were appropriate—effectively an admission that liability had been resolved at trial. This is not a factual assertion for purposes of judicial estoppel; rather, it is a legal argument about what issues were raised and resolved at trial. By contrast, judicial estoppel exists to deter the use of facts from other litigation to manipulate a subsequent court that is un-familiar with the prior factual positions assumed by the litigants. Here, of course, the district court that presided over both the trial and pre-trial proceedings is in the best position to detect inconsistent representations by the litigants. Accordingly, we reject AFE's estoppel argument as well.

## V.

For the foregoing reasons, we conclude that the district court abused its discretion in entering a nationwide injunction with no factual basis from which to conclude that AFE's use of the mark was nationwide. We vacate the injunction and remand for the district court to reconsider the appropriate scope of its injunction.

*VACATED AND REMANDED*